I'm joined today at the council table by my associate Gregory Rodriguez. This is his first opportunity to be in this courthouse. He's recently made the smart move from California into the Fourth Circuit's jurisdiction and I'm pleased to have him here joining me. Welcome. We're here challenging regulations that impinge upon local land use and recognize is a fundamental some call sometimes called a quintessential state and local authority critical to the ability of states and localities to protect and guide the development of their communities. Could I just ask you sort of preliminary I think question. You're challenging the regulation. We are challenging the regulations and we're also to the extent necessary challenging the statute. And that was going to be my question. It seems to me that your 10th Amendment challenge actually looks a lot like a facial challenge to 6409A. It is. It actually is not just a facial challenge. And I'm sorry to get you off track but. Surely but let me let me hop right to that. The problem with the that we certainly think the statute is a problem in the 10th Amendment. The statute says a state or locality may not deny and shall approve an application or a request for modification of the facility. Those two things put together seem like exactly what First V Mississippi said is prohibited which is a direct an absolute direction that really can't be avoided to approve to do something with not just power in the land use power involved legislative authority. And without getting into the merits of your substantive argument I was just it tees up a little oddly in the context of a challenge to rulemaking doesn't it? It does except procedurally. In some ways but what happens here is is at least one might be able to argue that perhaps you could find a path to finding the congressional law constitution. Well actually I'm asking you to find a path. Okay so let me say that the problem the problem I see created by the rulemaking is the creation of a deem granted remedy. Because the deem granted remedy means even if I sit back and do nothing which all the agencies were permitted to do in First V Mississippi I've done something. Correct but what what I'm just focusing on it is the is what looks like the facial challenge to 6409A in this context. I actually allow us to deny and to require the federal government to essentially step in a preemption you'd have to find the preemption involved was within the scope of the appropriate constitutional power. It's not easy I admit it it's it's but at least when I look at the law I say perhaps I can read this may shall not may not deny and shall approve language to say it has to leave me the choice to deny. Constitutionally has to leave me that choice so all but it's not easy to do with the plain language statute I admit that. I think it's compounded by the FCC rule which actually forecloses that option. Well we agree that it's difficult. It is difficult but one also but the statute itself provides an independent basis there's independent basis for returning these rules based on the statute without reaching necessarily the constitutional question. Oh really? I don't we don't we we can find on the deemed grant argument we can we can strike that we can question the regulation without questioning 6409A? Yes I think you can. Okay and if you want to weave that into your that's fine I was just let me let me talk about yes let me let me address that what as I mentioned this has a significant impact on local authority and to give you a sense of how significant the impact is I'd refer you to the FCC's brief their technical appendix at page 70 which shows a picture of a DAS what they say is a DAS antenna and you'll see it has when you look at that you'll see it has the antennas actually a box about the to the pictures shown in our reply brief of an installation actual installation in Lafayette California where someone attached in a pertinence to the side of a pole and then dropped equipment cabinets from that pertinent you'll see that the rule compels us to approve a effectively a wall of equipment that's six feet wide on either side in a r43 zone in Richmond that would essentially cover 25% of the frontage on a 50-foot lot the FCC comes to the conclusion that that's an insubstantial change I don't think it does and the fact that it even suggests that that could be a substantial change suggests that there's a fundamental defect in the way it approaches rule making similarly if you look at the FCC rule it directs us to allow an increase in the side of a building to which an antenna has been attached the FCC says this is not the case in this brief but if you read the regulation it's very clear under its rules if someone wants to increase the side of a building to which an antenna is attached we must approve that that's an assertion of FCC jurisdiction not over communications by wire or radio but over every building to which a rate to which a device is attached nothing in the act compels that that's based on the FCC's decision that the term base station in the act should be read expansively to give it authority it's never had before which is authority over ordinary buildings right although that doesn't go to the deemed grant issue it doesn't go to the deemed grant issue it goes but it goes to the question of does this is this rulemaking fundamentally defective should it be sent back to the agency with the direction not just to consider to finding that the deemed grant remedy does not work and seeing if the agency can find a way around the law consistent with the tenth amendment which is frankly the way I suspect one would preferably proceed it from a constitutional perspective well let me ask you a simple-minded question Supreme Court's had some language that says that the Commerce Clause can violate the 10th Amendment if it compels a state to regulate or a commandeer state officers to administer or enforce a federal regulatory program how are you being forced to do to either regulate or enforce well I think that's where the deemed grant comes in and the argument that's raised by but by the way this this law was not enacted if you look at the constitutional statement for this law it was not enacted pursuant to the commerce power it was in that the constitutional statement that goes with the law indicates it was enacted as part of a under the necessary and proper clauses part of the enactment of a budget so so let but let's assume let's assume for purposes of discussion that even though it wasn't adopted of the Commerce Clause those principles would apply I think when I look at the I think there's two problems one is the deemed grant effectively forces us effectively and the FCC says someone can go to court and appeal from a non-action to get a court to give a judicial imprimatur to the deemed grant which is effectively making it our grant I think that's different than some of the other cases you've talked about the other cases we've talked about even the 332 c7 cell siting cases which a circuit is quite familiar with don't go that far that goes pretty far now the other suggestion is you have a choice you cannot regulate it all in this area the problem is when you think about what's involved in permitting and land use it's not just does this is it is it too is it going too high am I making a decision that this is too high or too low it's involved with as the FCC the order recognizes safety code regulations are involved basic public basic not only basic public safety issues but traffic control issues if you're putting up something in a in a highway you need to be able to put up some type of barriers to prevent people from being harmed and what the FCC is really saying is you have a choice not to do anything with respect to these facilities they just get to put up willy-nilly well we saw what happened with the willy-nilly upset it's in the record a company called a company installed DAS systems on an antenna on a pole without getting the proper permits in California the pole fell over and a forest fire ensued so the problem is we don't have a real choice to say no and ever if you if you're familiar with permitting or land use you know that's the case and the problem that takes us to is I think what you dealt with in the Sebelius case which is have we gone so far here that the choice isn't a legitimate choice because the Supreme Court always says the choice has to be a legitimate choice it may be an uncomfortable choice but it's got to be a legitimate choice and I'd suggest to you that a choice that the localities give up their fundamental police powers and the states give up their fundamental police powers is not a legitimate choice and it's particularly heightened because of the deemed granted remedy so at the risk of returning to the more mundane let me talk about why this proceeding is effective and just from the straight motor vehicles or Chevron standpoint right I think everyone understands that from the standards in those cases this rulemaking would have to be overturned if the FCC considered factors it was not supposed to consider that ignore factors it was supposed to consider if it ignored the plain language of the statute or it adopted a solution that simply can't be contemplated by Congress and it did all those things in this under the FCC's rules the reason you can do that is because the FCC admits is four times in its brief did not actually consider all physical dimensions the law says we are entitled as localities to review a placement where there is a substantial change in the physical dimensions of a facility the plural what the FCC chose to do was look at one dimension in some cases and no dimension in other cases so the effect is for example on the one case I mentioned they can stick in a pertinence to a pole it goes out six feet and attach anything they want to it there's no limitation even though that has an obvious substantial effect in front of a home we talked about I mentioned the term that they said exercise authority over over buildings they did that by taking a term base station which has a fairly clear technical meaning within the field no one actually denies that it's never been meant to been read to reach structures and they included structures and their reasoning was this would make the statute more efficient well the efficiency of the statute is not a legitimate consideration when you're talking about the interpretation of clear of congressional language and what makes it particularly troubling is the FCC submitted multiple reports to Congress where it told Congress that a wireless facility consists of a tower and other support structures and a base station and backhaul so it's telling Congress what base station means and reports to Congress and when Congress writes back and uses a term the FCC uses they then interpret it to give it broad authority over something it's never had authority that's hiding an elephant in a mouthful but is is the would it be fair to say that the crux of your argument is that municipalities are resisting the lack of flexibility that they feel is necessary to be the ultimate determiners of whether something is reasonable on the ground you you take great issue with objective with the objective standards it's yeah I'm sorry so is it is it it seems what you're basically saying is you should be allowed some flexibility determined what is reason we in the rulemaking below we definitely told the FCC we thought a more effective enforcement mechanism would give us flexibility to define what changes would be permitted at particular sites and that was our that was our proposal the Commission which it rejected that's not what we're saying the statute we're not saying the FCC feels for that reason what we're saying is it failed to actually follow the standards of the act in defining physical dimension which it had to do and it failed to follow the standards of the act in defining base station it never adopted that to define what it meant by a substantial change in any sensible way so effectively we're complaining that it has the same fault in the Leathers case which is a failure to tailor the terms of the statute to the situations before it which are wide and varying what is proper in front of a house may be what is proper in front of a industrial building the FCC recognizes this may not be proper in front of a house and the failure of the agency if it's going to come up with its own objective standard that tailored is fatal it's something the courts found that in fail a fail in dealing with EPA permitting where there's a lot of variation and flows and technical data and the FCC the agency is expected to take that into account in formulating its rules so it which would be somewhat difficult would it not to come up with an ostensibly objective standard that can be applied across the board to presumably myriad situation well it certainly has a model in the and what it does with the National Historical Preservation Act in NEPA where it allows work and where it creates presumptions so that would be one possibility you go to if it found it impractical but in fact zoning across the board often takes is as you all are familiar with zoning often takes into account these variant circumstances and I don't think it's quite as difficult had the Commission done what it did when it was looking at the Historical Preservation Act for example taken to count things like volume the overall physical dimensions and think about think through that process it's a difficult process but that's the agency's responsibility it can't avoid that responsibility by simply coming up with a numerical standard that really bears no relationship to whether it's substantial or not which is what Congress said had to be considered but the agency actually did was decide providers need a six-foot extension so we'll give them a six-foot extension that has nothing to do with the standard the Congress came up with with that I need to reserve my time if I may unless there are further questions thank you very much it's flood may it please the court my name is Maureen flood and I'm here this morning on behalf of the Federal Communications Commission I want to start with the 10th Amendment concerns about conscription or coercion in the first instance as Judge Floyd was putting pointing out conscription occurs when the federal government requires a local government or a state government to act so in print this the statute was unconstitutional because it forced county sheriffs perform background checks nothing in section 6409 or any other provision of federal law requires state or local governments to review and approve modifications to wireless facilities it simply does so on its own if no action is taken what the statute says I think I would clarify that point your honor to say what section 6409 says to a state or state or local government if you decide to exercise the zoning authority and to review these modifications you regulate according to federal standards or you are preempted and the deemed granted remedy makes that clear the Commission found that it was necessary to adopt the deemed granted remedy under section 6409 to give effect to the may not deny shall approve language is that what you call a Hobson's choice they have the choice between acting in accordance with the yes and I think in the context of I wouldn't call it a Hobson's choice but in the context of 10th Amendment jurisprudence your honor it makes it different well in the Supreme Court has said that so long as a state or local government effectively has a choice there's no conscription Hodel you know petitioners are complaining about the fact that regulation of land use values is very very important they're exercising their police powers that was the set of circumstances presented to the Supreme Court in Hodel there a federal statute preempted state regulation of strip mining and the Supreme Court said that statute did not violate the 10th Amendment when it set up a framework pursuant to which states had to regulate according to federal standards or they would be preempted and federal law would fill the void and so here under the deemed granted remedy what happens is if a state or local zoning board finds the section 6409 framework to be so offensive they can do nothing they don't have to review the modification and after 60 days it will be deemed granted under federal law and I think this is underscored in the order where we talk about the fact that where an application is deemed granted and remember it's only deemed granted because there's no actual grant the wireless provider might go to court to get a gym and a judicial imprimatur in the form of the declaratory ruling so it actually has the deemed grant memorialized on a piece of paper so if it wants to go to a tower owner it can say to the tower owner in fact I have federal authorization to co-locate a new antenna on your tower but that again underscores the fact that there's no inscription here and judge Duncan as you pointed out in your opening comments you know you were asking please well as you were pointing out what the question you presented was is the petitioner challenging the statute or the regulation and in a facial challenge to a statute the constitutionality of a statute to win you have to prove that there's no constitutional way of implementing it and so here I believe that the deemed granted remedy demonstrates that both the statute and the remedy are in fact constitutional because the deemed grant remedy is a means to constitutionally implement the may not deny it shall approve language in the statute I'd like to talk about the Commission's determination of how we should measure substantiality the status quo prior to enactment of section 6409 was it state local governments had unlimited discretion to review modifications to wireless facilities if Congress was satisfied with that system it wouldn't have enacted section 6409 section 6409 specifically designed to limit review of insubstantial modifications to wireless facilities to speed the deployment of wireless services section 6409 is embedded in the spectrum act the entire purpose of which is to again speed the deployment of wireless service both both by commercial providers as well as public safety providers so it's unreasonable for the Commission to interpret to basically adopt an ambiguous definition of substantiality right because that would leave discretion with localities which is exactly what we are trying to Congress design the spectrum act to address to sort of minimize the flexibility that in its view would lead to delay yes that's the entire point and when we use the dimensions I have two points on that first and foremost the statute talks about physical dimensions plural it doesn't say each and every physical dimension and when the Commission delineated or set limits for what is substantial and what is insubstantial in every instance we considered multiple dimensions of the facility so with respect to structures towers and base stations and base stations are by and large let's say a utility pole or a we set a limit on how high an extension could go and how far out in a pertinence from the structure could go and the reason we measured dimensions based on height and for lack of better term width is because evidence in the record today showed that the equipment that wireless providers were deploying on structures often would go up and it would go out but it wasn't very deep and I defer to the technical appendix associated with my brief the equipment cabinets and the antennas placed on structures aren't very deep where concerns were raised about volume in the record the concerns were raised about ground equipment big blocks big cabinets that if I am a tower a base station would be installed on the ground next to me and there we did impose a volumetric limit because there was evidence in the record that the volume of those structures could hinder the public's ability to travel the reasonableness of the Commission's decision-making is based on the evidence before the agency and given that no party raised concerns about the volume of the equipment imposed on structures or proposed any criteria for measuring the volume on those structures it's not unreasonable for the Commission and its rules not to address volume now I want to talk about the Lafayette example that petitioners rely on heavily in the reply brief it is impossible to tell from that video where the original deployment a deployment that was reviewed and approved by the local government ends and the modification begins but remember section 6409 only covers modifications to facilities so I can't tell you looking at that video whether or not that block of equipment would be permissible under the Commission's section 6409 rules moreover the initial deployment itself and the modifications were made prior to enactment of those rules finally and I can't I don't mean to sort of speak for petitioners but it they are concerned about the volume of the cabinets that you see in the video arguably those cabinets are ground equipment that are subject to the volumetric limits in our rules there are big blocks of equipment located near the ground and so remember anytime a wireless provider wants to take advantage of section 6409 they have to file an application with the local  whether or not that application complies with the criteria in our rules that would give the local zoning board an opportunity to look at a deployment like the one in the Lafayette video and determine is that ground equipment that is subject to the volumetric limitations in our rules even if it found that it is as we point out in our brief where our rules do not capture outlier cases a waiver of our rules in that instance because it's being granted within 60 days how would that work they could come to the Commission file a petition for the waiver and presumably if they're worried that there will be some sort of problem if the wireless provider proceeds with deployment they could ask the Commission to place the moratorium on deployment also question if in fact the locality filed a waiver request with the FCC whether or not these that affect does that affect toll in any way the 60 day period it does not toll the 60 day period but they could ask the FCC the locality could ask the FCC to toll the 60 day period but also consider as a commercial matter whether or not a wireless provider would want to proceed with deployment while that waiver request was pending because they could proceed but if the Commission ruled in favor of the locality they would potentially have to take the equipment down but I want to clarify something throughout petitioners briefs they talk about the fact that under our NEPA rules and our historic preservation rules we adopt presumptions and that's not what we do here that is absolutely incorrect under our historic preservation and environmental protection rules we categorically exclude from review certain modifications to facilities that they are meet certain criteria okay they're not presumptive they are excluded now somebody under rule 1 dot 1 3 0 7 C can come to the Commission and file a complaint saying no no no no no in fact this modification will have an impact on the environment and at that point the Commission can investigate the complaint and if we find that there's an issue there we can require an environmental assessment that's exactly what happens under our section 69 wireless provider files an application with the local zoning authority local zoning authority evaluates the application and if the local zoning authority finds that the application does not satisfy our section 6409 criteria they could reject it but similarly the local zoning authority could say well you know in this instance technically it satisfies that criteria but this is not a situation that those rules right were designed to address here if we apply the rules it would be contrary to the intent of the statute we are effectively being forced to approve without further review a modification that is in fact substantial and then they file a waiver request with the FCC so it's exactly the same process well they made in the pellets papers they and will the such increases consistent with the meaning of substantial in the statute that's a shocking number but it's it's an inaccurate comparison what the way it really boils down to your honor our interpretation of the term base station the FCC evaluates we define base station as not just the transmission equipment on a structure but the structure itself so going back we look at a base station I'm a utility pole with a small antenna on top and a small box of equipment on my side so when we define substantiality we look at how that pole which doesn't change in size changes when additional equipment is mounted on that pole what petitioners are measuring is if I have a box of equipment on me and you put two more boxes of equipment on me the change in size of the equipment mounted on the pole so it's a disagreement between how you measure substantiality now I want to talk briefly about the other thing I need to get my head we're talking about modifications to existing facility correct yes and I want to point out too we are talking about modifications to facilities that were reviewed and approved by local governments so a modification might occur to a facility located in front of a school or a library or residence we are modifying a facility that the local zoning board has already deemed appropriate but to hold sometimes subject to the limitation that no further expansion that's correct and we preempt that restriction and the reason we do so is because you can imagine a situation where localities and in order to preserve their authority going forward would restrict the initial deployment to its initial size because they wouldn't want to be subject to the section 6409 rules now I want to go back and talk I understand you take my point though that it's it's that's not the situation that will exist now the the no further no expansion condition would have been attached before the that's correct your honor and in fact they will be preempted in that respect because Congress made the determination in section 6409 that going forward modifications that are insubstantial in terms of changing the physical dimensions should be local local government shouldn't have the opportunity to review those and I really want to clarify something here I mean let's go back to the statutory text the text talks about a substantial change in size of an object but the statute doesn't discuss a substantial change in local land-use values so it was appropriate for the Commission to adopt objective criteria that actually measures changes in size without regard to again impact on local land-use values and I make one more point you can we make that one point master question if you've been using you know physically yourself as a tower which visual helps because you talk about on my side yes make a right that if you if you're dealing with on your side and not the ground as you said the base station might have a numeral limitation if you talk about that but there's no numeral limitation if you're going up and don't extend too high so you could put as many on there that would fit right that's correct so for example typically what happens is no matter what that looks like that's not correct your honor so what the Commission the Commission is very careful and I think where you're going is that could be really unattractive and the Commission recognized that and in response to concerns raised by state and local governments the Commission said where concealment elements were a factor in the initial approval of the deployment any modification to that structure has to comply with concealment effort or the concealment conditions so for example you're driving down I-95 and you might see a tower that's disguised as a tree if another provider came along and sought to co-locate on that tower disguised as a tree their modification would also have to look like a tree they'd have to put branches and paint and other things another good example is let's say a structure was deployed behind a tree line so you couldn't see it the structure was on the other side of a tree line that separated a neighborhood if another provider came along and wanted to modify that facility and it would bring the structure above the tree line and you could see it that would be considered a substantial modification subject to local government. So compatibility is a part of the calculus in terms of substantiality. Absolutely I think what the Commission tried to do here is to eliminate disputes between wireless providers and local zoning authorities to create some bright lines that everybody would know how to apply going down the road but it didn't solely stick with those bright lines it specifically to address concerns preserved concealment measures and I think also importantly preserved building and safety codes right to ensure that the episode that Petitioners Council discussed where the structure fell down and started on fire that that didn't occur under our rules implementing section 6409. Now to answer your question, yes you may, but if you still remember the point. I don't remember the point but thank you for letting me answer your question. Thank you very much. Thank you council. Ms. Brown. No, I'm sorry. Mr. Eden, you're right. According to here, Mr. Eden, I'm sorry. That's what I have here. No, I'm sorry, Mr. Brown. You're right, Mr. Brown. I was right. Thank you, your honor. May it please the court, I'm Megan Brown representing CTIA and PCIA urging the court to uphold the agency's reasonable rules. In these rules, the FCC provides necessary clarity about the meaning of a new federal statute that has a lot of undefined terms. This statute emphatically preempts state discretion over certain co-locations and modifications to existing approved facilities. And after the statute was enacted, we saw some fundamental disputes arise between localities and some providers about how the statute should work, how it would apply. So the FCC did what federal agencies do all the time. It looked at the statute's words. It looked at the statute's purpose. It built a record. And then it drew lines, interpreted the words, and balanced these various needs. Its goal was to create workable criteria for the real world. And that real world means wireless equipment isn't just on towers. It appears on power poles, water tanks, and is approved for the top of office buildings. And as those networks age and broadband demand explodes, providers have to make certain changes. They have to swap out antennas for ones that are a couple inches bigger, a couple inches smaller. They may need to co-locate and join other carriers that are on the top of a hotel or a building. And the FCC found on this record that those kinds of changes were facing unnecessary delay, and that that delay threatened to undermine the goals of Congress in enacting 6409 and the Broader Spectrum Act. So they gave governments and providers some rules of the road. And in this rulemaking, as is often the case, not everybody got everything they asked for. Petitioners argued that rules were just unnecessary. And they said we should encourage collaboration and best practices. And they also urged the FCC to let them judge substantiality case by case in a very contextual and subjective way. They also said 6409 shouldn't apply beyond towers and purpose-built structures. So it wouldn't reach buildings, it wouldn't reach water towers or power poles. The FCC disagreed with them, as it did with many industry proposals. But ultimately, if you compare the comments below and the proposed rules with the final rules, you'll see the FCC added a whole lot more detail in these final rules to address a lot of the concerns that local governments put forward, the kind of concerns we've heard about, about safety on sidewalks and context and stealthing. Those were big themes in the comments below. The FCC addressed public safety, it added requirements to preserve stealthing, it retained certain conditions, albeit unrelated to height, Judge Duncan, that if you have existing conditions on a site, those conditions carry forward, unless they're the kind of conditions that would defeat the size criteria. So petitioners here face a heavy burden. The FCC's approach is not unambiguously precluded by either the terms or the goals of Congress. And under Chevron Step 2, what the agency had to do was reasonably interpret what are ambiguous terms. And they did that by looking in part to market realities, what industry and the local governments were actually putting forth in the record as deployments that one could see happening. And they drew these lines to promote Congress's goals in 6409. And for those reasons, these rules are reasonable and should be upheld. And if you don't have any questions. Thank you, counsel. Thank you very much. Mr. Eaton. Just a few points. I think the discussion by FCC counsel demonstrates one of the key problems we mentioned, which is the rules really don't consider physical dimensions of structures that actually have a significant impact on the community and on the visibility of the structure. The argument that the concealment element can be used to avoid the problem is not consistent with the rules themselves, which, as she admitted, preempts an acceptance of stealth situations or particular situations. It wouldn't help the problem I pointed out in Lafayette. The expansion there, that facility wasn't concealed, so it could have been expanded as much as the rules allowed. It seems to me that when you are required by Congress to consider physical dimensions, you have to consider all the physical dimensions, not just one up and one out. And if the reason you don't consider other dimensions is because you don't think those will really happen or they're de minimis, then your rules should reflect that. And that would be a rational rule. If I only think things are going up 10 feet, then I allow a 10-foot extension. I don't allow an extension of an addition of equipment to the side of a pole of effectively any size. I'm not sure why it would be unreasonable for an agency, though, to base its rulemaking on the comments that were made during the process that was designed to solicit them. Well, in part, first of all, the agency has an independent duty, obviously, to ascertain facts. But, in fact, the Lafayette video and the Lafayette pleadings were part of the record in this proceeding, and they're in the joint appendix that's before this court. We pointed out in our brief that, in fact, several different providers did suggest, including the Amici in this case, proposed volumetric solutions to this problem. So this is not a case where these solutions weren't proposed. They were proposed, and what's more, we said very specifically, you do have to consider all the physical dimensions because there are a variety of pieces of equipment attached in different ways, and those have significant impacts. This was not a hidden factor. This was not something hidden. We developed rules to try to define what physical dimensions should be considered, and we argued they should all be taken into account. So when the FCC decided not to consider them, it's deciding that it can read physical dimensions to mean physical dimension. And, frankly, under Chevron Step 1, I don't think they can do that. I think physical dimensions means what it says. I want to mention something that counsel for interveners indicated, which is that these rules reflect the intent of Congress. Let me just be clear. There is a provision of law, 332C7, that says the FCC only has authority to affect local zoning decisions in certain circumstances. So right now Congress protects that authority. 6409 is an exception to that generalized authority. So the exception can't be expanded by the agency to some level that Congress never intended. In other words, it's limited to exactly what Congress intended, because beyond that, 332C7 kicks in, and we're entitled to exercise our zoning authority. So when we talk about intent, there's all these changes. That's not our problem. We are dealing with that. In fact, we've authorized it. It doesn't help you too much in terms of congressional intent, because they wanted to make sure that these technologies and communications have a chance to proliferate as the needs expand and not be limited by local or state zoning permitting. Actually, that's not what they decided, because what they did was they have a provision of law that maintains in place 332C7 that gives us authority over the placement of wireless facilities. That's still the law. 6409 is an exception to that rule, and it doesn't undo all our authority. That turns full circle. You allowed these structures to be where they are, didn't you? We allowed those structures to be where we are, but often subject to either height restrictions or other restrictions that limit the size. And usually, and this is one of the things that was a complaint, was you require for changes in the size or for modifications, it requires review to make sure it's consistent with the underlying grant. So this wasn't a case. This is a case where the local authority over these facilities is being changed by 6409, but Congress only changed it in a certain way. It only changes it where the change where it does not change it where the change is substantial in physical dimensions, and that Congress, the FCC, had to define those terms. It had no authority to limit our authority in any other way because of 332C7. Let me sum up with going back, if I may, to the Tenth Amendment issue. I think the problem with the Tenth Amendment issue and the deemed, or excuse me, I wanted to mention the presumption issue. The difference between what happens under NEPA and what happens under the waiver is exactly what this panel noted in its questions, which is under one, the process stops until the argument is considered. Under the other, it doesn't. The waiver process is not considered an appropriate means to fill in a gap. The presumption process, or the process under NEPA, would allow someone to actually make the showing that something was, in fact, a significant change. It seems to me that the FCC is almost suggesting that would have been a viable alternative. I am out of time, so unless there's questions. You are, but I'll let you give one minute. One minute and you can sum it up. One minute on the Tenth Amendment. The deemed granted remedy is not an imprimatur, is not the federal government issuing the permit. If it was the federal government issuing a permit, there would be no need for a deemed granted. The FCC could simply grant the permit. And that is an option that the Mississippi suggests might be appropriate in an area where the FCC has full authority over the instrumentality of commerce. It can't go any further, but that may be an area where it can act. The deemed grant is actually a direction to the localities. That's what makes it different. The other issue I think that's key on the Tenth Amendment goes back to the Hobson's Choice, which really is a Hobson's Choice. We cannot avoid permitting these folks. And you can almost hear why from the discussion. The safety issues, the fire issues, that's going to involve permitting. And the minute we head into permitting, we run into 6409. And to say that we can't do the safety, that our choices between protecting safety or 6409 seems to me to exceed the scope of the commerce power and to raise the problems I mentioned earlier under Sebelius, which is going beyond scope or the appropriate nexus for the connection. There's no further questions? Thank you. Thank you very much. Thank you, counsel. We will ask the deputy clerk to adjourn court for today, and then we'll come down and brief counsel. The honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Roger L. Gregory, Allyson K. Duncan, Henry F. Floyd